**John and Elizabeth BOWEN, Petitioners,**

v.

**AETNA CASUALTY AND SURETY COMPANY, Respondent.**

**No. D–2559.**

Supreme Court of Texas.

Sept. 16, 1992.

Richard J. Karam, Peter Koelling, Bruce Mery, San Antonio, for petitioners.

W. Wendell Hall, San Antonio, Ben Taylor, Houston, for respondent.

ON APPLICATION FOR WRIT OF ERROR TO THE COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS

PER CURIAM.

At issue is whether this Court's decision in *Stracener v. United Services Auto. Ass'n*, 777 S.W.2d 378 (Tex.1989), applies to insurance claims arising before that opinion was released. A majority of this court holds that it does.

Elizabeth Bowen was hit by another driver, causing her over $125,000 damages in personal injuries. She and her husband, John, settled with the underinsured tortfeasor's insurance carrier for its maximum possible benefits of $25,000. Elizabeth Bowen carried $100,000 underinsured motorist coverage under an Aetna Casualty and Surety Company policy to which she then looked for payment of the balance of her damages.

In determining the benefits to be paid, Aetna deducted the $25,000 paid by the tortfeasor's carrier from the $100,000 maximum coverage available under the Bowen policy, for a total of $75,000. Aetna paid the Bowens who signed a release which their attorney did not deliver to Aetna.

A few days later, this Court issued its decision in *Stracener*, holding that in circumstances like the Bowens, liability insurance benefits received should be subtracted from actual damages sustained, not from the policy limits of the underinsured motorist coverage. The Bowens requested the additional $25,000 from Aetna to cover their remaining damages, within their policy limits. Aetna refused to pay, and the parties submitted the question of the amount due to the trial court.

Both parties moved for summary judgment, and the trial court granted Aetna's motion. The court of appeals affirmed solely on its belief that *Stracener* applies only to claims arising after *Stracener* was issued or claims which had already "entered the judicial arena when *Stracener* was rendered." 827 S.W.2d 97, at 99. This is an erroneous application of *Stracener*.

In *Stracener*, we explained that through judicial construction of legislative enactment, the "strong underlying public policy" of the Texas statute to protect "conscientious motorists from 'financial loss caused by negligent financially irresponsible motorists"[1] had already been firmly established. This Court stressed that its calculation of underinsured motorist benefits was the only one *consistent with our earlier decisions* in *American Liberty Insurance Co. v. Ranzau*, 481 S.W.2d 793 (Tex.1972) and *American Motorists Insurance Co. v. Briggs*, 514 S.W.2d 233 (Tex.1974). 777 S.W.2d at 383.

In the concluding portion of *Stracener*, we wrote that

> [t]hose clauses in insurance policies which are not consistent with and do not further the purpose of article 5.06–1 are invalid.

777 S.W.2d at 384. This language does not envision a limited, prospective application, but rather clarifies the way all underinsured motorist benefits must be understood.

██ A decision of the Supreme Court operates retroactively unless this Court exercises its discretion to modify that applica-

---

**1.** 777 S.W.2d at 382, quoting the policy statement of article 5.06–1(1) of the Texas Insurance

tion. *Carrollton–Farmers Branch I.S.D., et al v. Edgewood I.S.D., et al*, 826 S.W.2d 489, 514–522 (Tex.1992); *Reagan v. Vaughn*, 804 S.W.2d 463 (Tex.1990); *Sanchez v. Schindler*, 651 S.W.2d 249, 254 (Tex.1983). Rather than applying this rule, and in contrast to the clear language of *Stracener*, the Court of Appeals instead found that there was "no foreshadowing" of the *Stracener* decision and that it would be inequitable to apply it to those litigants who had relied on lower court rulings to the contrary. 827 S.W.2d at 99. As stated, however, *Stracener* corrects a "misinterpretation of the statute by some courts of appeal" which had "add[ed] words not found in the statute" and failed to construe the insurance law in accordance with its policy statement. *Id.* at 383, 381–82.

Accordingly, pursuant to Rule 170, TEX. R.APP.P., without hearing oral argument, a majority of this court grants the application for writ of error, reverses the judgment of the court of appeals, and remands the case to the court of appeals to determine whether Aetna's other defenses of release, accord and satisfaction or compromise and settlement sustain the summary judgment for Aetna, or whether the trial court should be reversed, rendering summary judgment for the Bowens.